Linda S. Mitlyng, Esquire
CA Bar No. 113810
P.O. Box 7188
Eureka, California 95502
707 441-1025
mitlyng@sbcglobal.net
Attorney for Plaintiff Jason Call

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JASON CALL,

   Plaintiff

v.

CALIFORNIA DEPARTMENT OF
JUSTICE/BUREAU OF NARCOTIC
ENFORCEMENT; COUNTY OF
HUMBOLDT; HUMBOLDT COUNTY
SHERIFF'S OFFICE; SPECIAL AGENT
JACK NELSEN; SPECIAL AGENT MATT
BADGLEY; SPECIAL AGENT MONTI
CERVELLI; SPECIAL AGENT BRETT
LETENDRE; SPECIAL AGENT RYAN
MAKI; AGENT HEATH HELMAN; AGENT
CORY PERSING; AGENT NATE MENDES;
AGENT ADAM HARKNESS; AGENT
MARVIN KIRKPATRICK; AGENT KEVIN
STONEBARGER; SHERIFF MICHAEL
DOWNEY; DEPUTY SHERIFF WAYNE
HANSON; DEPUTY SHERIFF GREG
MUSSON; DEPUTY SHERIFF BRIAN
QUENELL; DEPUTY SHERIFF BLAKE
MASSARO,

   Defendants.
_____

Case No. 15-CV-03353-HSG

**SECOND AMENDED COMPLAINT FOR
DAMAGES FOR VIOLATION OF CIVIL
RIGHTS (42 U.S.C. SECTION 1983):
UNREASONABLE USE OF FORCE;
UNLAWFUL SEARCH IN OBTAINING
THE SEARCH WARRANT;
UNREASONABLE SEARCH IN
EXECUTING THE SEARCH WARRANT;
FALSE ARREST;
CALIFORNIA CAUSES OF ACTION FOR:
ASSAULT & BATTERY; CONVERSION;
FALSE ARREST AND IMPRISONMENT;
FAILURE TO PROPERLY TRAIN AND
SUPERVISE; DEFAMATION;
INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS; NEGLIGENT
INFLICTION OF EMOTIONAL DISTRESS**

**(JURY TRIAL DEMANDED)**

1

The plaintiff, JASON CALL (hereinafter "Plaintiff" or "Call"), moves the Court for entry of judgment in his favor against, CALIFORNIA DEPARTMENT OF JUSTICE/BUREAU OF NARCOTIC ENFORCEMENT; COUNTY OF HUMBOLDT; HUMBOLDT COUNTY SHERIFF'S OFFICE; SPECIAL AGENT JACK NELSEN; SPECIAL AGENT MATT BADGLEY; SPECIAL AGENT MONTI CERVELLI; SPECIAL AGENT BRETT LETENDRE; SPECIAL AGENT RYAN MAKI; AGENT HEATH HELMAN; AGENT CORY PERSING; AGENT NATE MENDES; AGENT ADAM HARKNESS; AGENT MARVIN KIRKPATRICK; AGENT KEVIN STONEBARGER; SHERIFF MICHAEL DOWNEY; DEPUTY SHERIFF WAYNE HANSON; DEPUTY SHERIFF GREG MUSSON, DEPUTY SHERIFF BRIAN QUENELL, and BLAKE MASSARO and in support of such complaint avers as follows:

**PRELIMINARY STATEMENT**

This action arises from unlawful arrest of Plaintiff, unlawful search of Plaintiff's home and unlawful seizure of Plaintiff's personal property by the California Department of Justice/Bureau of Narcotic Enforcement and the Humboldt County Sheriff's Office and individual defendants Special Agent Jack Nelsen; Special Agent Matt Badgley; Special Agent Monti Cervelli; Special Agent Brett Letendre; Special Agent Ryan Maki; Agent Heath Helman; Agent Cory Persing; Agent Nate Mendes; Agent Adam Harkness; Agent Marvin Kirkpatrick; Agent Kevin Stonebarger; Sheriff Michael Downey; Deputy Sheriff Wayne Hanson; Deputy Sheriff Greg Musson, Deputy Sheriff Brian Quenell and Blake Massaro on January 19, 2012, in Arcata, California. Plaintiff sues for violation of his civil rights pursuant to 42 U.S.C. Section 1983 and California cause of action for Assault & Battery; Conversion; False Arrest and Imprisonment; Failure To Properly Train and Supervise; Defamation; Intentional Infliction of Emotional Distress; and Negligent Infliction of Emotional Distress.

**JURISDICTION AND VENUE**

1.     Plaintiff originally filed his complaint for violation of civil rights pursuant to 42 U.S.C. Section 1983 in the Humboldt County Superior Court. Defendants removed the action to this court on July 21, 2015.

2.     The acts and omissions giving rise to Plaintiffs claims occurred in Humboldt County, California and therefore the appropriate venue for this action is the United States District Court for the Northern District of California located in San Francisco California.

**IDENTIFICATION OF PARTIES**

3.     Plaintiff Jason Call is a resident of Arcata, California located in Humboldt County.

4.     Defendant CALIFORNIA DEPARTMENT OF JUSTICE ("DOJ") is a state agency duly organized and existing under the laws of the State of California.

5.     The BUREAU OF NARCOTIC ENFORCEMENT ("BNE") is a government entity within the DOJ located within the State of California.

6.     Defendant HUMBOLDT COUNTY ("COUNTY") is a governmental entity located within the State of California, County of Humboldt.

7.     Defendant HUMBOLDT COUNTY SHERIFF'S OFFICE ("HCSO") is a governmental entity located within the State of California, County of Humboldt.

8.      Defendant SPECIAL AGENT JACK NELSEN is and was at all relevant times a supervising agent of the DOJ/BNE and he committed the acts complained of herein while acting within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

9.      Defendant SPECIAL AGENT MATT BADGLEY is and was at all relevant times an agent of the DOJ/BNE and he committed the acts complained of herein while acting

within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

10.     Defendant SPECIAL AGENT MONTI CERVELLI is and was at all relevant times an agent of the DOJ/BNE and he committed the acts complained of herein while acting within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

11.     Defendant SPECIAL AGENT BRETT LETENDRE is and was at all relevant times an agent of the DOJ/BNE and he committed the acts complained of herein while acting within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

12.     Defendant SPECIAL AGENT RYAN MAKI is and was at all relevant times an agent of the DOJ/BNE and he committed the acts complained of herein while acting within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

13.     Defendant AGENT HEATH HELMAN is and was at all relevant times an agent of a California law enforcement Task Force and he committed the acts complained of herein while acting within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

14.     Defendant AGENT CORY PERSING is and was at all relevant times an agent of a California law enforcement Task Force and he committed the acts complained of herein while acting within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

15.     Defendant AGENT NATE MENDES is and was at all relevant times an agent of a California law enforcement Task Force and he committed the acts complained of herein

while acting within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

16. Defendant AGENT ADAM HARKNESS is and was at all relevant times an agent of Humboldt County Drug Task Force and he committed the acts complained of herein while acting within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

17. Defendant AGENT MARVIN KIRKPATRICK is and was at all relevant times an agent of Humboldt County Drug Task Force and he committed the acts complained of herein while acting within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

18. Defendant AGENT KEVIN STONEBARGER is and was at all relevant times an agent of Humboldt County Drug Task Force and he committed the acts complained of herein while acting within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

19. Sheriff MICHAEL DOWNEY is and was at all relevant times the Sheriff of Humboldt County and he committed the acts complained of herein while acting in his official capacity as Sheriff, within the scope and course of his official duties as such. He is sued in both his individual and official capacities

20. Deputy Sheriff WAYNE HANSON is and was at all relevant times employed as deputy sheriff the COUNTY and the supervisor for the Humboldt County Drug Task Force and committed the acts complained of herein while acting in his official capacity within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

21. Deputy Sheriff GREG MUSSON is and was at all relevant times employed as deputy sheriff of the COUNTY and committed the acts complained of herein while acting

5

within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

22. Deputy Sheriff BRIAN QUENELL is and was at all relevant times employed as deputy sheriff of the COUNTY and committed the acts complained of herein while acting within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

23. Deputy Sheriff BLAKE MASSARO is and was at all relevant times employed as deputy sheriff of the COUNTY and committed the acts complained of herein while acting within the scope and course of his official duties as such. He is sued in both his individual and official capacities.

24. All defendants acted under color of law in committing the acts complained of herein.

25. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

26. Plaintiff demands a jury trial.

<strong>STATEMENT OF FACTS</strong>

27. Plaintiff's doctor has prescribed the use of medical cannabis for treatment for permanent injuries of Plaintiff.

28. On September 27, 2011, Plaintiff's physician issue to Plaintiff an Informed Medical Consent & Verification ("IMCV") pursuant to California Health & Safety Code Section 11362.5 allowing Plaintiff to grow ninety-nine (99) mature plants and possess nineteen (19) pounds of cannabis.

29. Plaintiff was prescribed an IMCV because he sustained permanent injuries in a motorcycle accident in 1996.

30. Plaintiff has been diagnosed with degenerative joint disease in his right knee including arthritis, torn posterior cruciate ligament, and alignment issues of the right knee, ankle and hip.

31. At all times relevant hereto, the city of Arcata limited medical cannabis indoor growing by square footage to fifty (50) square feet.

32. Plaintiff was conscientious in insuring that the medical cannabis he grew was well within the limits established by the city of Arcata.

33. On January 19, 2012, Plaintiff's the cannabis Call was growing in his home was limited to 36 square feet and 78 plants.

34. On the morning of January 19, 2012, Plaintiff Jason Call was awoken about 7:30 am to pounding on his front door. Call got out of bed to find out what was going on.

35. As Call left his bedroom and entered the hallway leading to the front door Call asked: "Who is it?" Call heard the response: "Search warrant, open the door".

36. Call went to the front door and pushed aside the curtain located to the right side of the door to see out the window. He saw several uniformed agents pointing rifles at him through the window. The agents shouted: "Open the door now!"

37. Call opened the door and asked: "Why are you here?" Immediately California DOJ Special Agent Matt Badgley ("Badgley") shoulder-bunted Call, and shoved past Call. Call asked Badgley two additional times: "Why are you here?" Badgley turned toward Call, pointing his automatic rifle at Call and screamed: "That's top secret information!" Humboldt County Sheriff's Deputy Wayne Hanson (Hanson") handcuffed Call and pushed him against the wall in the hallway.

7

38.     Call heard other agents yelling: "Where's the money?" and "Clear." as the agents continued throughout Call's house away from Call's view.

39.     Call was next told to sit down. It was early morning and Call had just gotten out of bed so Call who suffers from a permanent injury to his right knee, was stiff and unable to move as fast as the agent wanted. At that time, Humboldt County Sheriff's Deputy Blake Massaro (Massaro) pointed an automatic rifle at Call's chest, which Call believe to be an AR15. Call dropped to the ground out of fear for his life. At this time, Call's hands were handcuffed behind his back.

40.     Call saw his friend Patrick Carter ("Carter") being taken outside by another agent. Carter hands were cuffed behind his back. Call recalls hearing Hanson ask the agent controlling Carter: "What are you doing? Take him back in there," referring to the living room where Carter had been sleeping on the couch.

41.     As Call was seated on the ground with his back against the wall he had been facing while being handcuffed, Call heard a couple agents telling Call's roommate Kevin Anderton to open the door. The door to Anderton's room, which was made of glass with a wood frame, was directly to the left of Call. Call heard Anderton say he wanted to see a badge. Task Force Agent Nate Mendes then picked up a skateboard and smash the glass of the door. Broken glass flew into Call's left ear since Call had been forced to sit next to the door. Agents went into Anderton's room and took control of Anderton.

42.     Anderton and Call were taken into the living room and told to sit in three chairs, which were lined up next to the woodstove. An officer moved a barstool from across the room, placed in front of Anderton, Carter, and Call and sat on it and kept watch over the three individuals, while the other agents ransacked Call's entire house. Eventually other agents entered Call's living room. Badgley asked Call for the combination to Call's safe. Call responded by saying he wanted to speak to his lawyer. Badgley told Call several

8

times: "You are under arrest." Shortly thereafter, Call heard the sound of his safe being opened. The safe had not been locked.

43.     While Carter, Anderton, and Call were seated handcuffed in the three chairs in Call's living room, Carter had asked the agent sitting on Call's barstool several times if he could use the restroom. After being denied several times, eventually Carter was escorted out of the living room to use the restroom.

44.     When Carter and the agent returned to the living room the three detainees were questioned individually starting with Anderton, then Carter, then Call.

45.     When the agent finally showed Call the search warrant, Call saw his name in a list of several other peoples. Call did not recognize these names other than his own.

46.     Eventually the agents release Anderton and Carter from their handcuffs.

47.     After a Humboldt County sheriff patrol car arrived in Call's driveway Call was escorted out to the patrol car by the sheriff who drove the patrol car. Call was told to get into the rear passenger side of the patrol car. As Call was getting into the vehicle, the door was slammed on Call's right foot. Call's right knee is the knee, which is permanent injured, and which Call told the agents about when Call was sitting handcuffed in his living room.

48.     Call was taken to the Humboldt County Correctional Facility. Call was fingerprinted then allowed to make a phone call to have bail arrangements made.

49.     Call was never advised of his *Miranda* rights against self-incrimination.

50.     Call cooperated with all law enforcement throughout the entire process.

51.     Call eventually bailed out and when he returned home he found that his entire house had been ransacked by the agents; doors were broken, glass was tracked throughout the house, everything was taken out of drawers, closets and cupboards and

thrown all over the house and the disposable gloves the agents wore were littered inside Call's house and outside in Call's yard.

52.     That same day, Hanson prepared a Humboldt County Sheriff's Office Information Bulletin, which was disseminated to the media falsely stating that "Officers located a commercial indoor marijuana growing operation." The Information Bulletin was issued by Humboldt County Sheriff Michael Downey.

53.     The Information Bulletin stating the false statements of Call arrest was broadcast over the radio and television, and published in newspapers and on the internet that day and for several weeks thereafter. The articles on the internet can still be read by the public.

54.     The Humboldt County Superior Court ordered the search warrants quashed for lack of probable cause and the case against Call was dismissed.

55.     Call timely filed claims with the State of California and Humboldt County pursuant to the California Tort Claims Act. Both claims were rejected.

56.   During the search, the defendants located 78 growing marijuana plants, well within the legal limit. Without making any effort to determine whether the plants were within the purview of the California Compassionate Use Act of 1996, the officers uprooted and seized all the plants and arrested Plaintiff.

**FIRST CAUSE OF ACTION**
Violation of Civil Rights – 42 U.S.C. Section 1983,
(Unreasonable Use of Force Against defendants Matt Badgley, and Blake Massaro)

57.     Plaintiff incorporate by reference all allegations set forth in paragraphs 1 through 57, above, as if fully set below.

58.     The use of force by the defendants Badgley and Blake Massaro in apprehending Plaintiff, including the shoulder bunting and pointing weapons at Plaintff after he was handcuffed and under the control of the officers, was unreasonable under the

prevailing circumstances and thus violated the Plaintiff's right not to be subjected to unreasonable seizure guaranteed by the Fourth Amendment of the United States Constitution.

59.     The actions of defendants Matt Badgley and Blake Massaro acting under color of law, in shoulder bunting Plaintiff, shouting at Plaintiff and pointing weapons at Plaintiff when he was cooperating, handcuffed, and under the complete control of the law enforcement officers, was excessive and unreasonable, was done intentionally, willfully and maliciously, with a deliberate indifference and/or reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from unreasonable seizure of his person and the right to be free from the use of excessive, unreasonable, and unjustified force.

60.     As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and humiliation, was deprived of his liberty and was otherwise damaged and injured.

WHEREFORE, Plaintiff seeks relief as set forth below.

**SECOND CAUSE OF ACTION**
Violation of Civil Rights – 42 U.S.C. section 1983
(Unlawful Search In Obtaining the Warrant against defendant Jack Nelson)

61.     Plaintiff incorporate by reference all allegations set forth in paragraphs 1 through 61, above, as if fully set below.

62.     The investigation conducted by defendant Jack Nelson ("Nelson") involved nothing more that following primary suspect Ryan Hutson ("Hutson"), whom he claimed was a broker for illegal marijuana trafficking, and assuming that the owner/resident of any

11

house she stopped at, and anyone she talked with was complicit in cultivation, transportation and sales of marijuana.

63.     The only contact Nelson had between Plaintiff and Hutson was that on March 23, 2011, nine (9) months before Nelson applied for his search warrant, at approximately 4:00 pm, Nelson saw "Hutsons' (sic) vehicle at 899 Bayside Cutoff [and] saw a subject with a heavy jacket and duffel bag walk toward the residence." Nelson claims he next saw "Hutson closing the trunk to her Toyota." Based on this information alone, Nelson concluded that "a substantial amount of marijuana was delivered to 899 Bayside Cutoff, Bayside."

64.     The following day Nelson claims to have driven by 899 Bayside Cutoff and "smelled the odor of growing marijuana." Nelson claims to have driven by 899 Bayside Cutoff and "smelled the odor of growing marijuana" on two other occasions in March and April.

65.     The distance from the road to the house located at 899 Bayside Cutoff is more than 100 feet and the road at that point is lined with large trees.

66.     More than seven (7) months later, on October 31, 2011, Nelson obtained PG&E records for Plaintiff's residence. But not for the months of March and April, instead for the months of August and September. Based on the usage for that time period Nelson determined it was "not solely indicative of indoor marijuana cultivation."

67.     On December 12, 2011, Nelson reviewed the PG&E records for a two-year period (11/12/2009 through 11/14/2011) for Plaintiff's home.  Based on the average usage for this two-year period and the most recent billing period, Nelson believed "the power usage was consistent with an indoor marijuana cultivation."

68.     Obviously Nelson had the records for March and April 2011, but did not disclose the usage for those months to the magistrate who signed the search warrant.

12

69.     The only other surveillance of Plaintiff or his home was on January 4, 2012, when "SA Maki drove by and observed "[Plaintiff's] gold colored Ford sedan...parked in front of the residence."

70.     On January 3, 2012, SA Heather Nelsen obtained the Employment Development Department ("EDD") information on Plaintiff and other individuals and discovered that EDD did not have "any wages, current state disability wages of unemployment wages for any of them."

71.     Nelson had no other information linking Plaintiff to the investigation he was conducting.

72.     This information was the sole basis that led Nelson, to believe based on his 15 years experience in narcotics investigations, "that Jason Call utilizes his residence to cultivate and sell marijuana."

73.     Based on his experience, Nelson knew or should have known that high electrical consumption alone is insufficient to support probable cause for a search warrant.

74.     Moreover, based on his experience Nelson knew or should have known that any information obtained nine (9) months before applying for a search warrant was stale.

75.     In fact, Nelson did know much of the information was stale because he stated in his affidavit that "It is further my opinion that the seizure of the items listed will provide evidence of the events reported in this affidavit *despite the lapse in time between the events described and the anticipated search..."*

76.     Nelson did not have probable cause to seek a search warrant of Plaintiff's home.

77.     Nelson knew he did not have probable cause to obtain a search warrant of Plaintiff's home and committed perjury by saying he did believe there was probable cause for the search of Plaintiff's home.

78.     The actions of defendant Nelson acting under color of law, in applying for a search warrant, and providing perjured testimony and in omitting material information

from the affidavit in support of the search warrant for Plaintiff's home without probable cause, was done intentionally, willfully and maliciously, with a deliberate indifference and/or reckless disregard for the natural and probable consequences of his acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from an unreasonable search of his home and seizure of his person.

79.     As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and humiliation, was deprived of his liberty and was otherwise damaged and injured.

WHEREFORE, Plaintiff seeks relief as set forth below.

## THIRD CAUSE OF ACTION
Violation of Civil Rights – 42 U.S.C. section 1983
(Unreasonable Search in Executing the Search Warrant against defendants Matt Badgley; Monti Cervelli; Brett Letendre; Ryan Maki; Heath Helman; Cory Persing; Nate Mendes; Adam Harkness; Marvin Kirkpatrick; Kevin Stonebarger; Wayne Hanson; Greg Musson; Brian Quenell; Blake Massaro)

80.     Plaintiff incorporate by reference all allegations set forth in paragraphs 1 through 80, above, as if fully set below.

81.     The conduct of the defendants in conducting the search of Plaintiff's home was unreasonable and violated clearly established constitutional rights of which a reasonable person and would have known.

82.     Any reasonably well trained law enforcement officer would have known that the manner used in searching Plaintiff's home was unreasonable.

83.     Defendants conducted the search of Plaintiff's home in an unreasonable manner, in effect ransacking the home and callously and needlessly destroying property.

14

84.     Plaintiff's entire house had been ransacked by the agents; agents urinated all over Plaintiff's bathroom, doors were broken, glass was tracked throughout the house, everything was taken out of drawers, closets and cupboards and thrown all over the house and the disposable gloves the agents wore were littered inside Call's house and outside in Call's yard.

85.     The actions of defendants acting under color of law, was done intentionally, willfully and maliciously, with a deliberate indifference and/or reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from an unreasonable search of his home.

WHEREFORE, Plaintiff seeks relief as set forth below.

**FOURTH CAUSE OF ACTION**
Violation of Civil Rights – 42 U.S.C. section 1983
(False Arrest against defendant Matt Badgley)

86.     Plaintiff incorporate by reference all allegations set forth in paragraphs 1 through 86, above, as if fully set below.

87.     Before even completing the search of Plaintiff's home, Badgley arrested Plaintiff without a warrant.

88.     Badgley did not have probable cause to arrest Plaintiff.

89.     Based on his experience, Badgley knew or should have known that he did not have probable cause to arrest Plaintiff without a warrant.

90.     The actions of defendant Badgley acting under color of law, in arresting Plaintiff without probable cause, was done intentionally, willfully and maliciously, with a deliberate indifference and/or reckless disregard for the natural and probable

consequences of his acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from an unreasonable seizure of his person.

91.     As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and humiliation, was deprived of his liberty and was otherwise damaged and injured.

WHEREFORE, Plaintiff seeks relief as set forth below.

**FIFTH CAUSE OF ACTION**
Violation of Civil Rights – 42 U.S.C. Section 1983,
(Failure to Properly Train and Supervise against California Department of Justice, Humboldt County, Humboldt County Sheriff's Office, Humboldt County Sheriff Michael Downey; Humboldt County Drug Task Force Supervisor Wayne Hanson)

92.     Plaintiff incorporate by reference all allegations set forth in paragraphs 1 through 92, above, as if fully set below.

93.     Defendants had a duty to adequately train, supervise and discipline their law enforcement officers in order to protect members of the public, including Plaintiff, from being harmed by the police unnecessarily.

94.     Acting under color of law and pursuant to official policy or custom, defendants knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis defendants' law enforcement officers in their duties to refrain from:

(a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

16

(b) unlawfully and maliciously arresting, imprisoning and prosecuting a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

(c) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the State of California; and

(d) otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

95. Defendants had knowledge or, had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

96. Defendants directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of defendants' law enforcement officers heretofore described.

97. Said defendants were deliberately indifferent to such duties and thereby proximately caused injury to Plaintiff as complained of herein.

WHEREFORE, Plaintiff seeks relief as set forth below.

**SIXTH CAUSE OF ACTION**
California Cause of Action for Assault & Battery
(Against defendants Matt Badgley, Blake Massaro)

98. Plaintiff incorporate by reference all allegations set forth in paragraphs 1 through 98, above, as if fully set below.

99.     Defendant Badgley intended to cause and did cause a harmful contact with Plaintiff's person.

100.    Badgley acted with willful disregard for Plaintiff's rights.

101.    Defendant Blake Massaro intended to and did put Plaintiff in fear of his life.

102.    Plaintiff did not consent to defendants' acts.

103.    Defendants' actions were done intentionally, willfully and maliciously, and were designed to and did cause fear, apprehension, and specific and serious physical and emotional pain and suffering.

104.    As a direct and proximate result of defendants' conduct plaintiff suffered physical injuries and extreme mental anguish and physical pain.

    WHEREFORE, Plaintiff seeks relief as set forth below.

## SEVENTH CAUSE OF ACTION
California Cause of Action for Conversion
(Against all defendants)

105.    Plaintiff incorporate by reference all allegations set forth in paragraphs 1 through 105, above, as if fully set below.

106.    At all times herein mentioned, and in particular on or, Plaintiff was, and still is entitled to the possession of the personal property, seized from Plaintiff on January 19, 2011.

107.    On or about, the above-mentioned property had a value of $950,000.

108.    On or about January 19, 2011, defendants took the above-mentioned property from plaintiff's possession and converted the same to their own use or destroyed the property.

109.    As a proximate result of defendants' conversion, plaintiff suffered damages which are the natural, reasonable, and proximate results of the conversion: all to plaintiff's damage in the sum of $950,000.

18

110. Between the time of defendants' conversion of the above-mentioned property to their own use and/or destruction of the property and the filing of this action plaintiff has expended time and money in pursuit of the converted property, all to plaintiff's further damage.

111. The aforementioned acts of defendant were willful, wanton, malicious, and oppressive, were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages.

WHEREFORE, Plaintiff seeks relief as set forth below.

**EIGHTH CAUSE OF ACTION**

(California Cause of Action for False Arrest and Imprisonment against California Department of Justice, Humboldt County, Humboldt County Sheriff's Office, Matt Badgley and Wayne Hanson)

112. Plaintiff incorporate by reference all allegations set forth in paragraphs 1 through 112, above, as if fully set below.

113. At all times relevant herein, (a) the Defendants acted with the intention of confining Plaintiff within fixed boundaries, (b) the act directly or indirectly resulted in confinement, and (c) Plaintiff was conscious of the confinement.

114. Defendants Badgley and Hanson imposed by force or threats an unlawful restraint upon Plaintiff's freedom of movement, to wit by arresting and handcuffing his hands behind his back, transporting him to the Humboldt County Jail where he was detained.

115. As a direct and proximate result of the conduct of the Defendants, Plaintiff suffered harm and damages including but not limited to the aforesaid damages.

116. Defendants California Department of Justice, Humboldt County, Humboldt County Sheriff's Office are liable under the doctrine of respondent superior.

WHEREFORE, Plaintiff seeks relief as set forth below.

**NINTH CAUSE OF ACTION**

(California Cause of Action for Failure to Properly Train and Supervise against California Department of Justice, Humboldt County, Humboldt County Sheriff's Office, Humboldt County Sheriff Michael Downey; Humboldt County Drug Task Force Supervisor Wayne Hanson)

117.    Plaintiff incorporate by reference all allegations set forth in paragraphs 1 through 117, above, as if fully set below.

118.    Defendants had a duty to adequately train, supervise and discipline their law enforcement officers in order to protect members of the public, including Plaintiff, from being harmed by the police unnecessarily.

119.    Acting under color of law and pursuant to official policy or custom, defendants knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis defendants' law enforcement officers in their duties to refrain from:

(a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

(b) unlawfully and maliciously arresting, imprisoning and prosecuting a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

(c) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the State of California; and

(d) otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

120.    Defendants had knowledge or, had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants had power to prevent or aid in preventing the commission of said

wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

121.   Defendants directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of defendants' law enforcement officers heretofore described.

122.   Said defendants were deliberately indifferent to such duties and thereby proximately caused injury to Plaintiff as complained of herein.

WHEREFORE, Plaintiff seeks relief as set forth below.

**TENTH CAUSE OF ACTION**
California Cause of Action for Defamation
(Against defendants County of Humboldt, Humboldt County Sheriff's Office, Humboldt County Sheriff Michael Downey; Deputy Sheriff Wayne Hanson)

123.  Plaintiff incorporate by reference all allegations set forth in paragraphs 1 through 123, above, as if fully set below.

124.  Plaintiff alleges, upon information and belief that defendants sought to defame Plaintiff.

125.   On the same day of Plaintiff's arrest, Hanson prepared a Humboldt County Sheriff's Office Information Bulletin, which was disseminated to the media falsely stating that "Officers located a commercial indoor marijuana growing operation."  The Information Bulletin was issued by Humboldt County Sheriff Michael Downey.

126.   The Information Bulletin stating the false statements of Plaintiff's arrest was broadcast over the radio and television, and published in newspapers and on the internet that day and for several weeks thereafter. The articles on the internet can still be read by the public.

127.    Plaintiff has suffered and continues to suffer substantial losses in income, earnings, and benefits and has been damaged in his capacity to earn his salary, his reputation, his good name, and has lost and will continue to lose employment benefits

128.    As a direct and proximate result of the defendant's actions, Plaintiff has suffered severe and serious injury to his person, all to Plaintiff's damage in a sum within the jurisdiction of this Court and to be shown according to proof.

129.    Defendants committed the acts herein maliciously, fraudulently, oppressively, and despicably, with wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff thus is entitled to recover punitive damages from defendants, and each of them, in an amount according to proof.

WHEREFORE, Plaintiff seeks relief as set forth below.

**ELEVENTH CAUSE OF ACTION**
(California Cause of Action for Intentional Infliction of Emotional Distress against all defendants)

130.    Plaintiff incorporate by reference all allegations set forth in paragraphs 1 through 130, above, as if fully set below.

131.    Defendants' conduct as alleged through this Complaint, was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress.

132.    The actions of defendants were intentional, extreme, outrageous and done with the intent to cause emotional distress or with reckless disregard of the probability of causing Plaintiff emotional distress.

133.    As a proximate result of defendants' conduct as herein alleged, the Plaintiff has suffered, and continues to suffer severe emotional distress and mental suffering severe

humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body, all to his damage in an amount according to proof.

134.   As a direct and proximate result of the Defendants' conduct, Plaintiff has been subjected to severe emotional distress and will continue to suffer severe and permanent humiliation, mental pain and anguish, and will continue to live in a constant state of emotional tension and distress.

135.   As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered and continues to suffer substantial losses in income, earnings, and benefits and has been damaged in his capacity to earn his salary, and has lost and will continue to lose employment benefits, all to Plaintiff's damage in an amount to be shown according to proof.

136.   Defendants committed the acts herein maliciously, fraudulently, oppressively, and despicably, with wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff thus is entitled to recover punitive damages from defendants, and each of them, in an amount according to proof.

WHEREFORE, Plaintiff seeks relief as set forth below.

**TWELFTH CAUSE OF ACTION**
(California Cause of Action for Negligent Infliction of Emotional Distress against all defendants)

137.   Defendants' knew or should have known that their conduct as alleged through this complaint, would cause Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress.

138.   As a proximate result of defendants' conduct as herein alleged, the Plaintiff has suffered, and continues to suffer severe emotional distress and mental suffering severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body, all to his damage in an amount according to proof.

139.   As a direct and proximate result of the Defendants' conduct, Plaintiff has been subjected to severe emotional distress and will continue to suffer severe and permanent humiliation, mental pain and anguish, and will continue to live in a constant state of emotional tension and distress.

140.   As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered and continues to suffer substantial losses in income, earnings, and benefits and has been damaged in his capacity to earn his salary, and has lost and will continue to lose employment benefits, all to Plaintiff's damage in an amount to be shown according to proof.

WHEREFORE, Plaintiff seeks relief as set forth below.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff sues for relief as set forth below:

1.   For general damages in the amount of $1,950,000.00;

2.   For special damages in amount to be determined at trial;

3.   For punitive damages against each defendant officer in the amount of $500,000.00;

4.   For costs of suit and reasonable attorneys' fees pursuant to statute; and

5.   For all other relief to which he may be legally entitled.

Dated: October 31, 2016           Respectfully Submitted,

By:            /s/
_____

LINDA S. MITLYNG, Esquire
Attorney for Plaintiff JASON CALL

24