UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON CALL, | Case No.15-cv-03353-HSG |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION FOR LEAVE TO AMEND** |
| SA MATT BADGLEY, et al., | Re: Dkt. No. 99 |
| Defendants. | |

Pending before the Court is Plaintiff Jason Call's motion for leave to amend the second amended complaint to add Humboldt County Sheriff's Deputy Troy Fulton as a defendant and to add excessive use of force and assault claims against both him and Defendant Eureka Police Officer Stanley Harkness. Dkt. No. 99. For the reasons articulated below, the motion is DENIED.

**I. BACKGROUND**

**A. Factual Background[1]**

In 2011, the California Department of Justice began investigating a suspected marijuana distribution operation. Dkt. No. 77-3 ¶¶ 12–13. Based on surveillance, the government suspected that Plaintiff was involved, and Humboldt County Superior Court Judge Timothy Cissna issued a search warrant for Plaintiff's residence on January 12, 2012. Dkt. No. 77-4 at BNE-0068–88, 96–103. On the morning of January 19, 2012, members of the Humboldt County Sherriff's Office, Humboldt County Drug Task Force, and the California Department of Justice, Bureau of Narcotics Enforcement Task Force executed the search warrant. As part of the search, officers seized 78 marijuana plants, a triple beam scale, individually packaged marijuana, prescription pills, and

---

[1] The facts of this case are detailed at length in the Court's recent order granting partial summary judgment. Dkt. No. 106. The Court incorporates those facts here.

multiple firearms. Dkt. No. 77-6 ¶ 16. Plaintiff claimed the marijuana was legal under California's Compassionate Use Act of 1996.

In February 2015, the Humboldt Superior Court quashed the search warrant, finding that it was based on stale information. Dkt. No. 86-1. On June 1, 2015, Plaintiff filed this action in Humboldt County Superior Court against Humboldt County and individual officers employed by the State of California, Humboldt County, and the City of Eureka (collectively, "Defendants"). Dkt. No. 1. Plaintiff alleges twelve federal and state causes of action against eighteen Defendants arising from the execution of the search warrant at his home. Dkt. No. 69.

### B. Procedural Posture

In his first amended complaint, filed on November 30, 2015, Plaintiff alleged that an unnamed Defendant pointed an automatic rifle at Plaintiff's chest in the course of the search. On the basis of this fact, Plaintiff alleged an unreasonable use of force claim against the unnamed Defendant. Dkt. No. 34 ¶¶ 24, 40, 58–61. On August 2, 2016, Plaintiff requested leave to amend the first amended complaint to add Humboldt County Sherriff's Office Sergeant Blake Massaro as the unnamed defendant. Dkt. No. 58. Defendants argued that Massaro was not on the roster of agents present at the search, Massaro had no recollection of being at Plaintiff's home, and Massaro had attended training the day of the search in Napa, California. *See* Dkt. Nos. 59, 60. Plaintiff stated, however, that he had seen Massaro in June 2016 and recognized him as the person who pointed the gun at him during the search. Dkt. No. 58-1 ¶¶ 12–16. The Court accordingly granted Plaintiff leave to amend the complaint to add Massaro as a Defendant on September 13, 2016. Dkt. No. 62. When Plaintiff failed to timely amend the complaint, the Court granted additional time to do so at Plaintiff's request. *See* Dkt. Nos. 66–68. Plaintiff filed the second amended complaint on November 10, 2016. Dkt. No. 69.

Since that time, fact discovery closed on December 30, 2016, and expert discovery closed on February 17, 2017. *See* Dkt. No. 65 (Scheduling Order). Defendants filed motions for summary judgment by the March 23, 2017, deadline and the hearing was held on April 27, 2017. Dkt. Nos. 77, 94. On May 16, 2017, the Court granted Defendants' motions for summary judgment on the basis of qualified immunity and declined to exercise supplemental jurisdiction

over the remaining state law claims. Dkt. No. 106.

## II. ANALYSIS

After the parties completed briefing on the motions for summary judgment, Plaintiff filed the pending motion for leave to amend the second amended complaint to add allegations and causes of action against Fulton and Harkness for excessive use of force, unreasonable search and seizure, and assault. Dkt. No. 99. In doing so, Plaintiff acknowledges that Massaro was not responsible for the alleged conduct and should be dismissed from the case. *See id.* at 2; Dkt. No. 62 at 6.

### A. Legal Standard

The parties disagree as to whether Plaintiff's motion for leave to amend should be evaluated under Federal Rule of Civil Procedure 15(a) (Amendments before Trial) or Federal Rule of Civil Procedure 16(b) (Modifying a Case Schedule). Rule 15 generally governs when parties may amend the pleadings. If a plaintiff has already amended the pleadings, he may amend again "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a)(2). Rule 16, in turn, governs the Court's pretrial conferences and scheduling orders. If a plaintiff's proposed amendment would alter the scheduling order, he may amend "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005) ("A pretrial order controls the subsequent course of the action unless modified upon a showing of good cause.").

Plaintiff argues that because the Court's scheduling order, Dkt. No. 65, did not include a deadline by which Plaintiff had to amend his complaint, Rule 15 should apply. Although the scheduling order is silent as to the date to amend the pleadings, it *does* include deadlines for the close of discovery and filing dispositive motions. *Id.* It also sets dates for the final pretrial conference and the 10-day jury trial. *Id.* Should the Court grant leave to file a third amended complaint, it would at the very least have to modify the scheduling order to accommodate further discovery and dispositive motions for both Fulton and Harkness as those deadlines have passed. *Cf. Taylor v. Shippers Transp. Express Inc.*, No. CV1302092BROPLAX, 2014 WL 12561079, at *2 (C.D. Cal. Apr. 18, 2014) (acknowledging the need to modify a scheduling order to provide

3

more time for discovery, dispositive motions, and even trial, where plaintiffs sought to add a new defendant). Plaintiff fails to explain why his request to add a new defendant and additional allegations would not alter these dates. Nevertheless, the Court need not decide the standard conclusively because it finds that amendment is unwarranted even under Rule 15's more liberal standard.

### B. Rule 15

Although leave to amend "shall be freely given when justice so requires," under Rule 15 the Court must evaluate several factors to determine whether amendment is proper: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) previous amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Consideration of these factors illustrates that amendment at this late date is not proper.

#### 1. Undue Delay & Prejudice

The Court finds that Plaintiff unduly delayed by waiting until April 21, 2017, to move to amend the complaint for a third time. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). Fact discovery closed over four months ago on December 30, 2016, and expert discovery closed three months ago on February 17, 2017. The pretrial conference is in less than three weeks on June 6, 2017. Trial is set to begin in five weeks on June 26, 2017. The Court finds that it would unduly prejudice Defendants to permit Plaintiff to amend the second amended complaint at this late stage of the proceedings.

The Court notes that Plaintiff's explanation for the delay is unpersuasive. Plaintiff's counsel states that she only learned of Fulton's involvement during Defendant Badgley's deposition on January 5, 2017. *See* Dkt. No. 104 at 4. And Plaintiff's counsel did not depose Harkness until January 6, 2017. *See* Dkt. No. 102-1, Ex. A.[2] Putting aside the choice to depose

---

[2] Plaintiff's counsel cites "scheduling difficulties" as the reason why these depositions were held after the discovery cut-off date, although no stipulation or request to extend the discovery cut-off was ever filed with the Court. *See* Dkt. No. 104-1 ¶ 5.

4

these Defendants so late, Plaintiff's counsel then waited three months after uncovering Fulton and Harkness' involvement, and almost a month after the deadline to file motions for summary judgment, to file the motion for leave to amend. Counsel blames Defendants for not responding immediately to her inquiries. *See* Dkt. No. 104 at 5. But counsel notably fails to identify the first date she reached out to defense counsel about Fulton and Harkness. *See* Dkt. No. 104-1 ¶ 8. Instead she points to a single phone conversation with defense counsel on March 3, 2017. *Id.* ¶ 9. Counsel says she did not follow up with defense counsel again until April 20, 2017, well after Defendants filed their motions for summary judgment. *Id.* Plaintiff's counsel offers no further explanation for her delay in filing a motion for leave to amend, other than obliquely listing the other case-related tasks she accomplished (e.g., attending a settlement conference and opposing motions for summary judgment). *Id.* at 4–5. If the case schedule was compressed or otherwise exacting, it was nevertheless a schedule to which Plaintiff stipulated. *See* Dkt. No. 64.[3]

### 2. Futility

Permitting Plaintiff to add a Fourth Amendment violation for excessive use of force against Fulton and Harkness would also be futile because both would be entitled to qualified immunity. A motion for leave to amend is futile if it can be defeated on a motion for summary judgment. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986).

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City & Cty. of San Francisco, Calif. v. Sheehan*, — U.S. —, 135 S. Ct. 1765, 1774 (2015) (quotation omitted). As part of this analysis, the Court must consider whether (1) the officer's conduct violated a constitutional right and (2) that right was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite

---

[3] The parties also were on clear notice as early as the hearing held on July 19, 2016 that the discovery cut-off date would be in December. The Court directed the parties to meet and confer and file a stipulated case schedule with a discovery cut-off date at the end of December 2016 and a trial date in May 2017. *See* Dkt. No. 57. For reasons unclear to the Court, the parties waited several additional months to file a stipulated scheduling order, but were free to engage in discovery in the interim.

5

that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate."

When determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment, the Court must evaluate the "facts and circumstances" of the particular case. *C.B. v. Sonora*, 769 F.3d 1005, 1029 (9th Cir. 2014). The Court judges the "reasonableness of the use of force from the perspective of a reasonable officer at the scene." *Sandoval v. Las Vegas Metropolitan Police Dept.*, 756 F.3d 1154, 1166 (9th Cir. 2014). For purposes of the qualified immunity analysis, the Court need not resolve the constitutionality of Fulton and Harkness' use of force. Rather, the Court must determine whether, based on the facts known to them at the time, any reasonable officer would have been on notice that the amount of force they used was unlawful under clearly established law. The Court considers the state of the law at the time of the alleged violation, as well as the information possessed by the officers at the time of search and the officers' actions viewed in the light most favorable to Plaintiff. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866–68 (2014).

According to Plaintiff, both Fulton and Harkness were armed when they entered Plaintiff's residence to execute the search warrant. In response to Plaintiff questioning why the officers were at his house, Fulton pointed a gun at Plaintiff's stomach and said that was "top secret information." Dkt. No. 99 at 2–3; *see also* Dkt. No. 84 ¶ 20. Humboldt County Sheriff's Department Lieutenant Hanson then handcuffed Plaintiff with his hands behind his back and ordered Plaintiff to sit down. Dkt. No. 94-7 ¶ 4; Dkt. No. 84 ¶¶ 21, 24. While Plaintiff was handcuffed and attempting to comply, Harkness pointed a gun at Plaintiff's chest. Dkt. No. 84 ¶ 24. Plaintiff sat down immediately in response. *Id.* ¶¶ 24–25.

Plaintiff acknowledges, however, that the officers executed the search warrant knowing Plaintiff had weapons in his home and knowing that the warrant was to search for drugs. Dkt. No. 77-4 at BNE-0073. And Fulton and Harkness had their guns drawn during the initial entry into the house, when there were other occupants in the house whom the officers had not yet detained. *See* Dkt. No. 84 ¶¶ 25–28. Plaintiff's roommate, who was standing behind a glass door next to Plaintiff, failed to comply with the officers' orders to open the door. Dkt. No. 77-16 ¶ 4. The

6

officers did not know if the roommate was armed or alone in that room. *Id.* At least one officer was concerned that he might be arming himself. *Id.*

In short, these circumstances were "tense, uncertain, and rapidly evolving," and Fulton and Harkness had to make "split-second judgments" about the amount of force to use during their initial entry into the home. *See Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (quotation omitted). Plaintiff cites no authority that Fulton and Harkness' conduct violated a clearly established constitutional right in light of these undisputed circumstances. Plaintiff's reliance on *Robinson v. Solano Cty.*, 278 F.3d 1007, 1014 (9th Cir. 2002), is misplaced. There, police officers pointed guns at the plaintiff's head, after a neighbor called and said a man had shot two dogs. *Id.* at 1010. Plaintiff had walked from his front door toward police officers who were on the street outside his property. *Id.* He did so calmly and did not have a visible weapon. *Id.* In finding that the officers acted unreasonably, the Ninth Circuit pointed out that "the crime under investigation was at most a misdemeanor; the suspect was apparently unarmed and approaching the officers in a peaceful way. There were no dangerous or exigent circumstances apparent at the time of the detention, and the officers outnumbered the plaintiff." *Id.*

The same is not true here. The officers were executing a search warrant in a house with an unknown number of occupants; at least one other occupant did not comply with officers' orders; and Plaintiff had at least two guns registered to him. The Supreme Court has explicitly acknowledged the danger in executing a warrant to search for drugs because it "may give rise to sudden violence or frantic efforts to conceal or destroy evidence." *Michigan v. Summers*, 452 U.S. 692, 702–03 (1981). Because of this danger, the Supreme Court has concluded under similar circumstances that entering with guns drawn and holding occupants temporarily at gunpoint while executing a search warrant is not excessive force. *Los Angeles Cty., California v. Rettele*, 550 U.S. 609, 611 (2007). Accordingly, a reasonable officer would not be on notice that having guns drawn, and even pointing them in Plaintiff's direction, was unlawful under the circumstances of this case.

To the extent Plaintiff also seeks to add an additional § 1983 cause of action against Fulton for unreasonable search and seizure, that amendment would be similarly futile for the reasons laid

7

out in the Court's order for partial summary judgment. *See* Dkt. No. 106 at 13–16 (finding the officers who executed the search warrant were entitled to qualified immunity). The Court further notes that it has already declined to exercise supplemental jurisdiction over the remaining state law claims, so adding assault claims against Fulton and Harkness would be futile as well. *Id.* at 21–22.

### III. CONCLUSION

The Court accordingly DENIES the motion for leave to amend the complaint.

**IT IS SO ORDERED.**

Dated: 5/19/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge